ORAL ARGUMENT SCHEDULED FOR JANUARY 23, 2012

No. 11-5135

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

NATIONAL FEDERATION OF FEDERAL EMPLOYEES – IAM,

Plaintiff-Appellant,

v.

THOMAS J. VILSACK, SECRETARY,
UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,

Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

REPLY BRIEF

_____

STEFAN P. SUTICH
General Counsel
National Federation of Federal
Employees, FD1, IAMAW
805 15th Street NW Ste. 500
Washington, D.C. 20005
(202) 216 – 4457

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  iii

GLOSSARY  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  v

STATUTES AND REGULATIONS  .  .  .  .  .  .  .  .  .  .  .  .  .  2

SUMMARY OF ARGUMENT  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  2

ARGUMENT  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  3

    I.    THE DEFENDANTS INCORRECTLY RELY ON THE
        ADMINISTRATIVE PROCEDURE ACT .  .  .  .  .  .  .  .  4

    II.    WHETHER THE ACTION IS A FACIAL OR APPLIED
        CHALLENGE IS IRRELEVANT TO THE DISPOSITION
        OF THIS ACTION.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  5

    III.    THE DEFENDANTS FAILED TO SHOW THAT ITS
        DESIGNATION OF ALL JCCCC EMPLOYEES FOR
        RANDOM TESTING WITH NO ANALYSIS OF
        INDIVIDUAL POSITIONS IS PERMISSABLE.  .  .  .  .  8
        .  .  .  .  .  .  .  .  .  .  .  .  .

        A.    Even when the agency has classified a *category* of
            employees as subject to random suspicionless
            drug testing, the court evaluates the functions of
            each position to determine whether the asserted
            governmental interest outweighs the privacy
            interest of employees in those positions.  .  .  .  .  11

        B.    Random suspicionless drug testing of incumbent
            federal employees invariably requires that some
            direct nexus to public safety be evident between
            that employee's position and the risk posed by that
            employee's drug use.  .  .  .  .  .  .  .  .  .  .  .  .  16

C.  Courts will reject an agency's random suspicionless drug testing policy when it solely seeks to protect the integrity of the agency's mission or its programs. . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES[*]

## Cases

American Federation of Teachers v. Kanawha County Bd. of Ed.,
529 F. Supp. 2d 883, 903 (S.D. W.Va. 2009) . . . . . . . .9

Bell v. Wolfish, 441 U.S. 520 (1979) . . . . . . . . . . . . . . 9

Bd. of Educ. v. Earls, 536 U.S. 822 (2002) . . . . . . . . . . 9

BNSF Ry. Co. v. Dept. of Transp., 566 F.3d 200
(D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . 7

* Chandler v. Miller, 520 U.S. 305 (1997) . . . . . . . .10, 18, 20, 21

Harmon v. Thornburgh, 878 F.2d 484
(D.C. Cir. 1989) . . . . . . . . . . . . . . . 13, 18, 21, 22

Knox County Education Ass'n v. Knox County Bd. of Ed.,
158 F.3d 361 (6th Cir. 1998) . . . . . . . . . . . . . . . 9

Lead Indus. Ass'n v. EPA, 647 F.2d 1130 (D.C. Cir. 1980) . . . . 6

* Nat'l Fed'n of Fed. Employees v. Cheney, 884 F.2d 603
(D.C. Cir. 1989) . . . . . . . . . . 7, 13, 14, 15, 18, 19, 22

Nat'l Treasury Employees Union v. United States Customs Serv.,
27 F.3d 623 (D.C. Cir. 1994) . . . . . . . . . . . . . . 17

* Nat'l Treasury Employees Union v. Von Raab,
489 U.S. 656 (1989) . . . . . . . . 7, 10, 12, 13, 15, 16, 21

Nat'l Treasury Employees Union v. Yeutter, 918 F.2d 968
(D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . .19

Poett v. U.S., 657 F. Supp. 2d 230 (D.D.C. 2009) . . . . . . . . 6

---

[*]     Authorities upon which we chiefly rely are marked with asterisks.

iii

Samson v. California, 547 U.S. 843 (2006) . . . . . . . . . . . 9

* Skinner v. Ry. Labor Executives' Ass'n,
    489 U.S. 602 (1989) . . . . . . . . . . . . . . . 10, 16, 21

Stigile v. Clinton, 110 F.3d 801 (D.C. Cir. 1997) . . . . . . . . 17

Vernonia School Dist. 47J v. Acton,
    515 U.S. 646 (1995) . . . . . . . . . . . . . 8, 9, 10, 16

**Statutes**

5 U.S.C. § 500 *et seq.* . . . . . . . . . . . . . . . . . 4

5 U.S.C. § 706 (2) (A) . . . . . . . . . . . . . . . . . 5, 6

5 U.S.C. § 706 (2) (B) . . . . . . . . . . . . . . . . . 5, 6

# GLOSSARY

APA – Administrative Procedure Act

CDL – Commercial Driver's License

DOJ – U.S. Department of Justice

JCCCC – Job Corps Civilian Conservation Center

NFFE – National Federation of Federal Employees

USDA – U.S. Department of Agriculture

ORAL ARGUMENT SCHEDULED FOR JANUARY 23, 2012

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 11-5135

_____

NATIONAL FEDERATION OF FEDERAL EMPLOYEES – IAM,
Plaintiff-Appellant,

v.

THOMAS J. VILSACK, SECRETARY,
UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,
Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

REPLY BRIEF

_____

## STATUTES AND REGULATIONS

All applicable statutes, etc. are contained in the Brief for the Secretary of Agriculture.

## SUMMARY OF ARGUMENT

The Defendants-Appellees continue to urge this Court to ignore Supreme Court and D.C. Circuit precedent that requires Courts to review the duties of individual positions to determine if the positions can be properly designated for random drug testing.  In doing so, the Defendants make two new arguments. First, the Defendants ask the Court to defer to the Agency's judgment as it typically would in notice and comment rulemaking under the Administrative Procedure Act.  However, this is not an APA case and in any event, courts do not defer to agencies when questions over whether a regulation is constitutional are at issue.  Second, the Defendants make a new claim that this is a facial attack on the drug testing policy and that facial attacks are disfavored.  It is clear through both Supreme Court and D.C. Circuit precedent that this distinction plays no significant role in the analysis.

The government has once again failed to show why all JCCCC positions must be subject to random drug testing.  This includes a wide variety of positions ranging from welders, drug and alcohol counselors,

office clerks and purchasing agents. The District Court erred in finding that the USDA could defend the random testing program for a class consisting of all JCCCC employees. Summary judgment should be reversed.

## **ARGUMENT**

The Defendants' Response brief seeks to divert the Court's attention away from the substance of NFFE's argument that the USDA Drug Testing Regulation unconstitutionally designates for random suspicionless drug testing many JCCCC employees in positions that are not safety-sensitive. The Defendants have still not demonstrated a special need for why *every* JCCCC employee should be subjected to random suspicionless drug testing. Rather, Defendants continue to rely heavily on an unsubstantiated assumption that a Center *may* be evacuated at some point and, in such a hypothetical situation, a non-CDL holding federal employee *may* be required to transport students.  Moreover, Defendants assert that it is "undisputed" that all JCCCC employees are required to possess a valid driver's license when the record shows that this fact *is* in dispute. Appellees' Brief, at 33, but see JA 139 (Def.'s Dawson Decl., ¶ 14) (admitting that not all JCCCC employees are required to hold valid driver's licenses).

Rather than directly contest the merits of NFFE's argument and demonstrate to the court why *each and every* JCCCC employee may be constitutionally subjected to random suspicionless drug testing, Defendants have instead sought to distract the court with new legal arguments. Once the USDA Drug Testing Regulation is properly scrutinized, it is clear that the Defendants' random suspicionless drug testing policy has been drafted and applied too broadly and cannot be sustained under the Fourth Amendment.

## I.    THE DEFENDANTS INCORRECTLY RELY ON THE ADMINISTRATIVE PROCEDURE ACT

Contrary to the Defendants' assertion, this action was *not* brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* NFFE filed its Complaint seeking to enjoin the USDA from implementing its internal personnel policy (referred to *in name only* as the "USDA Drug Testing Regulation") because the random suspicionless drug testing policy violates JCCCC employees' right against unreasonable government searches under the Fourth Amendment. Thus, the District Court had federal question jurisdiction under 28 U.S.C. § 1331. None of the Parties to this case, nor has the District Court, invoked the APA as a claim or defense in

the Court below. The Defendants' assertion that this case involves the APA is unfounded.

Even *if* the APA were applicable, the Defendants' contentions are incorrect. The Defendants' brief devotes substantial time and effort to explaining the standard of review applicable in an "arbitrary and capricious analysis" under 5 U.S.C. § 706 (2) (A). Yet the Defendants fail to acknowledge § 706 (2) (B) whereby "The reviewing court shall – (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (B) contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706 (2) (B). If the APA is relevant *at all* to this appeal, then undoubtedly the judicial standard of review would be that required under § 706 (2) (B) for adjudging agency action "contrary to constitutional right." Without conceding that the APA has any applicability here, the appropriate and relevant standard of review is *not* "arbitrary and capricious" as the Defendants believe.

Due to the Defendants' mistaken belief that this case involves the APA, and their subsequent misconception that the standard of review under the APA would be "arbitrary and capricious," the Defendants' urge this Court to afford the agency the "utmost deference." Appellees' Brief, at 20. However, as established above, this action (*if* it involved the APA)

5

would proceed under the "contrary to constitutional right" standard of review. "In contrast to the deferential standard of review [applicable to § 706 (2) (A)], a court's review of 'constitutional challenges to agency actions . . . is *de novo* . . . . '[A] reviewing court owes no deference to the agency's pronouncement on a constitutional question,' and must instead make 'an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making.'" <u>Poett v. United States</u>, 657 F.Supp.2d 230, 241 (D.D.C. 2009) (<u>quoting</u> <u>Lead Indus. Ass'n v. EPA</u>, 647 F.2d 1130, 1173-74 (D.C. Cir. 1980)). Deference to the Defendants is not appropriate when the judicial review is pursuant to § 706 (2) (B); thus, the Defendants' newly introduced legal theory must be rejected.

## II.   WHETHER THE ACTION IS A FACIAL OR APPLIED CHALLENGE IS IRRELEVANT TO THE DISPOSITION OF THIS ACTION

The Defendants' other legal theory, not raised below, contends that NFFE's action is a *facial* challenge to the USDA Drug Testing Regulation and, therefore, the Court should be reluctant to find the random suspicionless drug testing policy unconstitutional.  This contention finds no support in <u>Nat'l Treasury Employees Union v. Von Raab</u>, 489 U.S. 656 (1989), and other challenges to internal agency drug testing policies.

NFFE's challenge is predicated on specific facts related to the numerous positions covered by the USDA Drug Testing Regulation. This action closely mirrors the other drug testing cases decided by the Supreme Court, as well as this Court, and none of the precedent has made a significant distinction between facial and applied constitutional challenges.[1] See *e.g.* Nat'l Fed. of Federal Employees v. Cheney, 884 F.2d 603, 605 (D.C. Cir. 1989)(reviewing Department of Defense policy covering 9,000 army employees in 14 classes of positions). The standard of review applicable in this appeal is *de novo* summary judgment review and, thus, a renewed analysis under the Von Raab balancing test.

Moreover, whether the challenge is deemed facial or applied, the facts that will determine whether the testing is constitutional remain the same. The controlling inquiry is whether the agency may impose a random suspicionless drug testing policy on an incumbent federal employee consistent with the Fourth Amendment when that specific employee's position has no nexus to public safety and the testing serves only to protect the integrity of the agency's mission. It is imperative that the court review

---

[1] The Defendants reliance on BNSF Ry. Co. v. Dept. of Transp., 566 F.3d 200 (D.C. Cir. 2009) is misplaced. There, the Court reviewed notice and comment rulemaking. Moreover, it primarily concerned procedures in the testing process and not what employees should be subject to random testing.

the substantive duties of individual employee positions in order to make
that determination. For many of the JCCCC employees, the answer here is
clearly *no*, and the Defendants' argument that this is a facial challenge is of
no relevance to that conclusion.

## III. THE DEFENDANTS FAILED TO SHOW THAT ITS DESIGNATION OF ALL JCCCC EMPLOYEES FOR RANDOM TESTING WITH NO ANALYSIS OF INDIVIDUAL POSITIONS IS PERMISSABLE

The Defendants entice this Court to consider various Fourth
Amendment drug testing cases that have little to do with the issue at hand.
This action involves the random suspicionless drug testing of federal
employees and, thus, we need not look any further than those cases that
also involved the random suspicionless drug testing of federal employees.
The Defendants cite other cases, such as those dealing with minor
schoolchildren in the custody of the state, parolees, or convicted felons, in
the apparent hope that this Court will disregard other cases more directly
applicable to the random suspicionless drug testing of incumbent JCCCC
employees. Appellees' Brief, at 24 (citing Vernonia School Dist. V. Acton,
515 U.S. 646 (1995), and Bd. of Educ. v. Earls, 536 U.S. 822 (2002), both
dealing with testing of students participating in extracurricular activities);
at 25 (citing Samson v. California, 547 U.S. 843 (2006), upholding testing

of parolees); at 41 (citing <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979), upholding "extremely intrusive body cavity strip searches in prisons"). However, there are numerous cases that provide the guiding principles for reviewing the USDA's random suspicionless drug testing policy applied to incumbent JCCCC employees.[2] While the Fourth Amendment balancing test is the same in all contexts involving a government search, the particular considerations involved in weighing the relevant interests of schoolchildren and convicted felons, versus incumbent federal employees, are significantly divergent to indicate that many such cases are irrelevant to the current action.

As the Defendants acknowledge, the seminal cases for assessing random suspicionless drug testing policies are <u>Skinner</u> and <u>Von Raab</u>. Appellees' Brief, at 23. Decided the same day, these two cases concretely enunciated the balancing test applicable when the government wishes to conduct a suspicionless search:

> *As we note in [<u>Skinner</u>], our cases establish that where a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is*

---

[2] Defendants also rely on <u>Knox County Education Ass'n v. Knox County Board of Education</u>, 158 F.3d 361 (6th Cir. 1998). The rationale there has not been adopted by the D.C. Circuit and in any event should be rejected for the same reasons applied by the District Court in <u>American Federation of Teachers v. Kanawha County Bd. of Ed.</u>, 592 F. Supp. 2d 883, 903 (S.D. W.Va. 2009).

> *necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context.*

<u>Von Raab</u>, 489 U.S. at 665-66.

And yet, the Defendants downplay <u>Chandler</u> which provided significance guidance as to how the holding in <u>Von Raab</u> should be applied. Appellees' Brief, at 49-53. Justice Ginsburg, in the opening paragraph, makes clear that <u>Von Raab</u> permits random suspicionless drug testing "in certain limited circumstances." <u>Chandler</u>, 520 U.S. at 308 (<u>quoting</u> <u>Von Raab</u>, 489 U.S. at 668). In reversing Georgia's candidate drug testing policy, the Supreme Court held that the state's program "does not fit within the closely guarded category of constitutionally permissible suspicionless searches." <u>Id.</u> at 309.  Most importantly, the Court cautioned that, "[H]ardly a decision opening broad vistas for suspicionless searches, <u>Von Raab</u> must be read in its unique context." <u>Id.</u> at 321.

While <u>Skinner</u>, <u>Von Raab</u>, and perhaps even <u>Vernonia</u> provide the fundamental framework for applying the generic Fourth Amendment balancing test, <u>Chandler</u> is explicit in reminding reviewing courts that the inquiry is context-specific and that each random suspicionless drug testing case must stand on its own merits. Thus, there is no way to assess the constitutionality of the USDA Drug Testing Regulation without

investigating the duties of each individual JCCCC employee's position to discover whether there is an actual forfeiting of privacy rights and whether that privacy interest is significantly outweighed by the government's interest in preventing an actual, non-attenuated risk to public safety. So, while the basic balancing test remains the same in all cases, applying the balancing test to incumbent federal employees creates a whole different body of jurisprudence than does applying the balancing test to schoolchildren, parolees, or incarcerated felons.

In sum, cases applying the balancing test to the random suspicionless drug testing of incumbent federal employees explicate three common elements: (1) the court will look at individual employee positions, (2) a clear, non-attenuated risk to public safety must be presented by the employee's position, and (3) a random suspicionless drug testing policy imposed solely to maintain the integrity of the agency's mission or programs will not be sustained.

A.  <u>Even when the agency has classified a *category* of employees as subject to random suspicionless drug testing, the court evaluates the functions of each position to determine whether the asserted governmental interest outweighs the privacy interest of employees in those positions</u>

In <u>Von Raab</u>, the Supreme Court held that Customs Service employees "who seek to be promoted to positions that directly involve the

interdiction of illegal drugs or that require the incumbent to carry a firearm" could be required to submit to suspicionless testing. <u>Von Raab</u>, 489 U.S. at 677. However, the Court simultaneously rejected the Customs Service's attempt to test employees who "handle classified material." Acknowledging that the governmental interest in protecting classified information is compelling, the Court nonetheless remanded this category of employees for further proceedings. By making this classification so broad, the Customs Service included for suspicionless testing Accountants, Animal Caretakers, Baggage Clerks, Messengers and various other categories of employees who "handle classified material." The Supreme Court remanded this category of employees because "it is not evident that those occupying these positions are likely to gain access to sensitive information, and this apparent discrepancy raises in our minds the question whether the Service has defined this category of employees more broadly than is necessary." <u>Id.</u> at 678.

This Court has also adhered to the position-specific approach in applying the balancing test to incumbent federal employees. In <u>Harmon</u>, the DOJ attempted to designate for random suspicionless drug testing three categories of employees: prosecutors in criminal cases, employees with access to grand jury proceedings, and personnel holding top secret national

12

security clearances. <u>Harmon</u>, 878 F.2d at 485. The court held that the third category – personnel holding top secret security clearances – could constitutionally be submitted to random suspicionless drug testing consistent with <u>Von Raab</u>. <u>Id.</u> at 491-92. However, the court upheld the injunction as to the other two categories of employees finding the DOJ had written its policy too broadly. <u>Id.</u> at 493. While the court acknowledged that the policy could possibly be rewritten such that certain employees within these categories could constitutionally be subjected to random suspicionless drug testing, "the burden should fall on DOJ to redefine a new category of employees eligible for random urinalysis." <u>Id.</u> at 491 n.10.

Perhaps the best example of this Court's position-by-position analysis is found in <u>Cheney</u>. There, the Department of the Army designated for random suspicionless drug testing "any of fourteen classes of critical jobs, categorized as follows: aviation, guard and police, 'personnel reliability program,' and the Alcohol and Drug Abuse Prevention and Control Program." <u>Cheney</u>, 884 F.2d at 606. The Court individually assessed each of these four categories of employees for the permissibility of random suspicionless drug testing. After analyzing the factual responsibilities of each category of position (as well as the individual positions *within* each

category), this Court held that the Army could constitutionally test some employees but not others.

For example, aviation personnel (including aircraft mechanics and pilots), was a category that the Court found had a sufficient safety nexus to warrant random suspicionless drug testing. Id., at 610 ("perform tasks that are frought with extraordinary peril"). Similarly, the court found that guard and police personnel had such a diminished expectation of privacy ("the civilian guards' expectations of privacy are severely reduced as a condition of employment in a high-security, military context") that random suspicionless drug testing was constitutionally permissible because it was a "modest additional privacy intrusion." Id. at 613.  As to the other categories of employees, the Court held that certain positions were permitted to be tested while others were not. Regarding "personnel reliability program" employees, the Court found that the category was so broadly drawn (such as to include animal caretakers and secretaries) that it could not determine the reasonableness of random suspicionless drug testing these employees and thus remanded. Id. at 611-12. Likewise, the final category of Alcohol and Drug Prevention personnel was equally overbroad, such that the court upheld testing of direct service personnel but not "chain of custody" employees. Id. at 613-15.  Cheney makes it explicitly clear that the Court of

14

Appeals will evaluate an agency's designation of categories of employees for random suspicionless drug testing on a position-specific basis because a one-size-fits-all generic classification is not harmonious with the Fourth Amendment balancing test.

The USDA's Drug Testing Regulation, Appendix A, lists the agency employees who are subject to random suspicionless drug testing. JA 67. Except for the JCCCC Staff, the positions designated for random suspicionless drug testing in other sections of the USDA Drug Testing Regulation are generally distinct, specific, and unique jobs with obvious safety implications. However, inexplicably, the Defendants include Job Corps Center Staff as one blanket category without any distinction between the different employees' positions and responsibilities.   There is no rationale for why the Agencies make no distinction between Drug and Alcohol counselors and Purchasing Agents. There can be little doubt that the category of JCCCC employees is drawn "more broadly than is necessary." Von Raab, 489 U.S. at 678.

B.  **Random suspicionless drug testing of incumbent federal employees invariably requires that some direct nexus to public safety be evident between that employee's position and the risk posed by that employees' drug use**

The cases clearly indicate that a direct, non-attenuated nexus between the employee's position and a risk to public safety must exist in order to justify random suspicionless drug testing. This nexus requirement is present in every random suspicionless drug testing case and, while the risk to public safety is but one element involved in the balancing test, it is nonetheless vital to the determination of whether a random suspicionless drug testing program is compatible with the Fourth Amendment.

In <u>Skinner</u>, the Supreme Court upheld testing in part due to the "surpassing safety interests" implicated by the railroads. <u>Skinner</u>, 489 U.S. at 633-34; 628 ("The reason is obvious. An idle locomotive, sitting in the roundhouse, is harmless. It becomes lethal when operated negligently by persons who are under the influence of alcohol or drugs."). In <u>Von Raab</u>, the Court also upheld testing of gun-carrying Customs Service employees because "even a momentary lapse of attention can have disastrous consequences." <u>Von Raab</u>, 489 U.S. at 670. Even in <u>Vernonia</u>, while the heavily diminished privacy interest of underage schoolchildren was a primary factor in upholding the testing policy, the Supreme Court also

16

acknowledged that the risk of physical injury presented by drug-using student athletes was an important consideration. <u>Vernonia</u>, 515 U.S. at 662.

Similarly, this Court has upheld testing where a drug-impaired federal employee poses an actual risk to national security such that random suspicionless drug testing is constitutionally permissible. In <u>U.S. Customs Service</u>, this Court dealt with the imposition of a random suspicionless drug testing policy on incumbent employees with access to certain sensitive information databases. <u>NTEU v.</u> <u>U.S. Customs Service</u>, 27 F.3d 623, 624 (D.C. Cir. 1994). The logic affirming the policy was that a drug-using employee is at risk of disclosing sensitive Customs information to a drug smuggler, and the drugs in turn will fall into the hands of the public at large and create both a public health and crime risk. <u>Id.</u> at 628-29; 630 (upholding testing because a single shipment of narcotics "can bring misery and death to a large number of our citizens").  Likewise, this Court upheld random suspicionless drug testing in <u>Stigile</u> because the risk posed by a drug-addicted federal employee with frequent access to the President was so great and "[t]he assassination of a President has an enormously disruptive impact on the life of the nation." <u>Stigile v. Clinton</u>, 110 F.3d 801, 804 (D.C. Cir. 1997).

Inversely, where public safety is *not* at risk the courts will *not* uphold the constitutionality of a random suspicionless drug testing program. In Chandler, the Supreme Court rejected Georgia's candidate testing program because it diminished "personal privacy for a symbol's sake." Chandler, 520 U.S. at 322. However, the Court found it important to reiterate the importance of the safety nexus in its closing: "But where, as in this case, public safety is not genuinely in jeopardy, the Fourth Amendment precludes the suspicionless search, no matter how conveniently arranged." Id. at 323 (downplaying the significance given to minimally intrusive HHS procedures when the testing is otherwise performed for symbolic reasons); 321-22 (rejecting testing because "[elected] officials typically do not perform high-risk, safety-sensitive tasks").

This Court also rejected as unconstitutional a random suspicionless drug testing policy in Harmon as it applied to *all* criminal prosecutors and employees with access to grand jury proceedings because "the chain of causation between misconduct and injury is considerably more attenuated." Harmon, 878 F.2d at 491.  In Cheney, while testing of some employees was upheld, this Court found that other positions lacked the required safety nexus. The court remanded as to "chemical and nuclear surety positions" because the record lacked evidence that each and every employee within

18

this broad category had a responsibility related to public safety. <u>Cheney</u>, 884 F.2d at 611 (rejecting, for example, testing of a secretary because there was no evidence she would be responsible for, or have access to, dangerous materials); <u>but</u> <u>see</u> 610 (upholding testing of aviation employees due to the government's "compelling safety interest").

The Defendants argue that JCCCC employees may be randomly drug tested because, in the event of a hypothetical emergency, they may be called upon to transport students.  This argument that any JCCCC employee *may* drive an enrollee is far too attenuated to meet the Fourth Amendment standard. There is scant evidence that emergencies actually occur at JCCCCs, and even in the very few instances cited by the Defendants, there is a complete lack of evidence as to who actually transported enrollees (whether *all* employees participated, or only those with CDLs). Positing such hypothetical situations as justification for infringing on incumbent federal employees' Fourth Amendment rights, without any documented evidence of an actual problem or prior accidents, is far too attenuated a reason to satisfy the nexus requirement. Merely holding a state-issued drivers license is not sufficient to mandate random drug testing. <u>See</u> <u>NTEU v. Yeutter</u>, 918 F.2d 968, 972 (D.C. Cir. 1990) ("It is not obvious to us that the government could show a special need, unrelated to law enforcement,

to test drivers who do not carry passengers . . . but surely such a [bright] line could be drawn between testing individuals whom the government pays to transport passengers safely and testing individuals who drive on their own time.").

> C.   **Courts will reject an agency's random suspicionless drug testing policy when it solely seeks to protect the integrity of the agency's mission or its programs**

The Defendants' justification for why *all* JCCCC employees must submit to random suspicionless drug testing amounts to little more than an impermissible integrity argument. Regardless of how intrusive (or minimally intrusive) the agency's testing procedures are, a random suspicionless drug testing policy with no nexus to public safety and which is imposed for "symbol's sake" only cannot stand under the Fourth Amendment. Chandler, 520 U.S. at 322. The Defendants claim that JCCCC employees are constitutionally permitted to be tested under the policy because they are in close proximity to enrollees and they are charged with enforcing the zero tolerance policy. Not only are these contentions in dispute, and thus not ripe for summary judgment, but these arguments serve only to buttress the Defendants' belief that a potential drug-using JCCCC employee would *frustrate the mission* of the Job Corps. This

integrity argument is not a constitutionally permissible reason for imposing a random suspicionless drug testing policy on incumbent federal employees.

Chandler provides the clearest enunciation of the Fourth Amendment's prohibition on integrity arguments to justify random suspicionless drug testing.  For an agency to impose random suspicionless drug testing "the proffered special need . . . must be substantial . . . ." Chandler, 520 U.S. at 318.  Georgia failed to indicate any special need other than "the incompatibility of unlawful drug use with holding high state office." Id. The Court found this symbolic reason to be insubstantial and therefore invalidated Georgia's drug testing statute. Id. at 322. The Court also noted that it had rejected the same integrity argument in Von Raab, holding that "Indeed, if a need of the 'set a good example' genre were sufficient to overwhelm a Fourth Amendment objection, then the care this Court took to explain why the needs in Skinner, Von Raab, and Vernonia ranked as 'special' wasted many words in entirely unnecessary, perhaps even misleading, elaborations." Id.

The Circuit Court in Harmon (decided contemporaneously with Von Raab and Skinner) rejected the DOJ's integrity argument out-of-hand. While the court subsequently upheld testing for some of the DOJ

21

employees, it held that "the government's integrity interest cannot justify the testing of any one of the three broad categories at issue here." <u>Harmon</u>, 878 F.2d at 491.

In <u>Cheney</u>, this Court faced the random suspicionless drug testing of Alcohol and Drug Abuse Prevention and Control Program employees. The Army argued that testing of these employees was permissible because "drug use is inconsistent with the job." <u>Cheney</u>, 884 F.2d at 613.   The court upheld testing of drug counselors because drug use would frustrate allegiance "to their essential mission," but denied testing of "chain of custody" personnel because no safety nexus existed. <u>Id.</u> at 614. Notably, the <u>Cheney</u> court cautioned that "taken to its logical end, the integrity rationale would justify the random testing of every federal employee." <u>Id.</u> at 613 (<u>citing</u> <u>Harmon</u>, 878 F.2d at 488).

Here, the Defendants have only presented integrity-based justifications for why *all* JCCCC employees must submit to random suspicionless drug testing. Proximity to enrollees and responsibility for enforcing the zero tolerance policy are both justifications more akin to the Army's argument in <u>Cheney</u>. These are not sufficient bases upon which to premise a random suspicionless drug testing policy for incumbent federal

22

employees because they serve only to maintain the integrity of the Job Corps program and, in fact, have no clear connection to safety.

## **CONCLUSION**

For the foregoing reasons, the judgment of the District Court should be reversed and this Court should enjoin the random drug testing of all JCCCC employees until such as time as the USDA's Drug Testing Regulation is drafted and applied in accordance with the Fourth Amendment or this litigation resolves the dispute.

Respectfully submitted,

/s/ Stefan P. Sutich
Stefan P. Sutich, Esq.
General Counsel
National Federation of Federal
Employees, Federal District-1,
Int'l Assoc. Of Machinists and
Aerospace Workers, AFL-CIO
805 15th Street N.W., Suite 500
Washington, D.C. 20005
202-216-4457

23

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **4,511 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007  in **14 point Georgia font**.

 /s/ Stefan P. Sutich
Stefan P. Sutich, Esq.
General Counsel
National Federation of Federal
Employees, Federal District-1,
Int'l Assoc. Of Machinists and
Aerospace Workers, AFL-CIO
805 15th Street N.W., Suite 500
Washington, D.C. 20005
202-216-4457

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of November, 2011, the foregoing

Brief for the Appellant has been served on counsel for the Defendants via

this Court's Electronic Case Filing System (ECF).


Mark W Pennak
Mark.Pennak@usdoj.gov

Leonard Schaitman
Leonard.Schaitman@usdoj.gov



/s/ Stefan P. Sutich

Stefan P. Sutich
General Counsel
National Federation of
Federal Employees, FD-1,
IAMAW
805 15th Street NW, Suite
500
Washington, D.C. 2000
202-216-4457